# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

IN RE: AMARANTH NATURAL GAS
COMMODITIES LITIGATION

This Document Relates To:

ALL ACTIONS.

)
)
)
)
)
)
)
)
)
)
)

MASTER FILE NO.
07 CIV. 6377 (SAS)

**ECF Case**

## MEMORANDUM OF LAW OF DEFENDANT AMARANTH LLC
## IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFFS' CORRECTED CONSOLIDATED CLASS ACTION COMPLAINT

Amelia T.R. Starr
Sheldon L. Pollock
Dharma B. Frederick
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (212) 450-3800

*Counsel to Amaranth LLC*

Dated:  April 28, 2008

# TABLE OF CONTENTS

PAGE

**PRELIMINARY STATEMENT**.....................................................................................1

    A.    Overview ...............................................................................................1

    B.    Summary of Argument.........................................................................2

**FACTUAL BACKGROUND** ........................................................................................4

    A.    Parties...................................................................................................4

    B.    Allegations Against the Fund ...............................................................5

**ARGUMENT** .............................................................................................................6

I.    THE COMPLAINT FAILS TO STATE A CLAIM FOR MANIPULATION UNDER THE COMMODITY EXCHANGE ACT AGAINST THE FUND (COUNT I). ...........................................................................................................6

    A.    The Complaint Fails to State a Claim Against the Fund Under Sections 6(c) and 6(d). ........................................................................7

    B.    Plaintiffs Lack Standing Under the Other Named Sections of the CEA to Assert Claims Based on Manipulation of Settlement Prices..................8

    C.    Plaintiffs' Broader Market Manipulation Theory Brought Under Sections 9(a) and 22(a) Fails to Satisfy Any Pleading Standard...............8

        1.    Rule 9(b) Requires Facts Specific to Each Defendant to Be Pled with Particularity.....................................................................9

        2.    Plaintiffs Do Not Plead Market Manipulation with the Requisite Particularity Under Rule 9(b)......................................................10

        3.    Even Under a More Relaxed Pleading Standard, Plaintiffs Fail in Count I to State a Claim for Which Relief Can Be Granted Against the Fund. ........................................................................12

II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING, VICARIOUS LIABILITY, OR CONTROLLING PERSON LIABILITY AGAINST THE FUND UNDER THE COMMODITY EXCHANGE ACT (COUNT II)..........................................................................13

    A.    Plaintiffs' Aiding and Abetting Claim Against the Fund Fails.................13

i

B.     Plaintiffs Fail to Plead a Claim for Vicarious Liability Against the Fund...................................................................................... 15

C.     There Is No Private Right of Action for Controlling Person Liability Under the Commodity Exchange Act. ....................................................... 19

     1.     Section 13(b) of the Commodity Exchange Act Does Not Provide a Private Right of Action. ................................................ 20

     2.     There Is No Private Action for Violations of CFTC Rule 166.3. . 21

III.     PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM (COUNT V). ................... 22

**CONCLUSION**............................................................................................................ 25

# TABLE OF AUTHORITIES

PAGE

**Cases**

Am. Agric. Movement v. Bd. of Trade of Chicago,
  977 F.2d 1147 (7th Cir. 1992)...................................................................................8

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
  493 F.3d 87 (2d Cir. 2007)......................................................................................9

Baghdady v. Robbins Futures, Inc.,
  No. 97-C-8794, 1999 WL 162789 (N.D. Ill. Mar. 12, 1999).................................21

Bell Atl. Corp. v. Twombly,
  127 S. Ct. 1955 (2007) ..........................................................................................12

Benfield v. Mocatta Metals Corp.,
  No. 91-Civ-8255, 1992 WL 177154 (S.D.N.Y. July 13, 1992) .............................14

Benfield v. Mocatta Metals Corp.,
  No. 91-Civ-8255, 1992 WL 58879 (S.D.N.Y. Mar. 13, 1992) .............................14

CFTC v. Amaranth Advisors L.L.C.,
  No. 07 Civ. 6682 (S.D.N.Y. July 25, 2007) ...........................................................2

CFTC v. Carnegie Trading Group Ltd.,
  450 F. Supp. 2d 788 (N.D. Ohio 2006)..................................................................21

Champ v. Siegel Trading Co.,
  No. 89-C-7148, 1990 WL 19984 (N.D. Ill. Feb. 27, 1990) ..................................20

Cleveland v. Caplaw Enters.,
  448 F.3d 518 (2d Cir. 2006)...................................................................................16

Clifford R. Gray, Inc. v. Le Chase Constr. Servs., LLC,
  31 A.D.3d 983 (3d Dep't 2006) .............................................................................22

CompuDyne v. Shane,
  453 F. Supp. 2d 807 (S.D.N.Y. 2006)....................................................................23

Czech Beer Imps., Inc. v. C. Haven Imps., LLC,
  No. 04 Civ. 2270, 2005 WL 1490097 (S.D.N.Y. June 23, 2005) ..........................23

Damato v. Hermanson,
  153 F.3d 464 (7th Cir. 1998).................................................................................14

FDIC v. FSI Futures, Inc.,
    No. 88 Civ. 0906, 1990 U.S. Dist. LEXIS 2907 (S.D.N.Y. Mar. 13, 1990)..................... 10, 12

Fustok v. ContiCommodity Servs., Inc.,
    618 F. Supp. 1069 (S.D.N.Y. 1985).................................................................................... 20, 21

George Basch & Co. v. Blue Coral, Inc.,
    968 F.2d 1532 (2d Cir. 1992)................................................................................................... 24

Goldstein v. SEC,
    451 F.3d 873 (D.C. Cir. 2006) ............................................................................................... 1, 2

Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc.,
    706 F. Supp. 221 (S.D.N.Y. 1989)............................................................................................. 10

In re AM Int'l Inc. Sec. Litig.,
    606 F. Supp. 600 (S.D.N.Y. 1985)............................................................................................. 18

In re Bayou Hedge Fund Inv. Litig.,
    472 F. Supp. 2d 528 (S.D.N.Y. 2007)........................................................................................ 23

In re Crude Oil Commodity Litig.,
    No. 06 Civ. 6677, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ........................................ 9, 10

In re Fidelity/Micron Sec. Litig.,
    964 F. Supp. 539 (D. Mass. 1997) ........................................................................... 2, 16, 17, 24

In re Natural Gas Commodity Litig.,
    337 F. Supp. 2d 498 (S.D.N.Y. 2004)........................................................................ 15, 18, 19

In re Natural Gas Commodity Litig.,
    358 F. Supp. 2d 336 (S.D.N.Y. 2005).................................................................... 1, 11, 13, 14

Klein & Co. Futures, Inc. v. Board of Trade of City of New York,
    464 F.3d 255 (2d Cir. 2006)....................................................................................................... 22

Kolbeck v. LIT America,
    923 F. Supp. 557 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998) .......................... passim

Krause v. Forex Exchange Mkt.,
    356 F. Supp. 2d 332 (S.D.N.Y. 2005)....................................................................................... 14

Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.,
    179 F. Supp. 2d 118 (S.D.N.Y. 2000)....................................................................................... 21

Lesavoy v. Lane,
    304 F. Supp. 2d 520 (S.D.N.Y. 2004)....................................................................................... 10

Louis Vuitton Malletier v. Dooney & Bourke,
    500 F. Supp. 2d 276 (S.D.N.Y. 2007) ....................................................................... 24

Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.,
    14 F. Supp. 2d 331 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999) ............................. 23

Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    619 F. Supp. 727 (S.D.N.Y. 1985) ........................................................................ 7, 20

Mina Invest. Holdings Ltd. v. Lefkowitz,
    51 F. Supp. 2d 486 (S.D.N.Y. 1999) ......................................................................... 24

Modica v. Modica,
    791 N.Y.S.2d 134 (2d Dep't 2005) .......................................................................... 25

Nicholas v. Saul Stone & Co. LLC,
    No. Civ. 97-860, 1998 WL 34111036 (D.N.J. June 30, 1998),
    aff'd, 244 F.3d 179 (3d Cir. 2000) ..................................................................... 21, 22

Parker v. Brush Wellman, Inc.,
    377 F. Supp. 2d 1290 (N.D. Ga. 2005) ................................................................. 12, 13

Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. Sirmer,
    No. 89-C-2239, 1989 WL 165155 (N.D. Ill. Dec. 27, 1989) ................................................ 15

Reading Int'l v. Oaktree Capital Mgmt.,
    317 F. Supp. 2d 301 (S.D.N.Y. 2003) ........................................................................ 23

Roe v. Aware Woman Ctr. for Choice, Inc.,
    253 F.3d 678 (11th Cir. 2001) ............................................................................... 15

Rudd v. KeyBank, N.A.,
    No. C2-05-CV-0523, 2006 WL 212096 (S.D. Ohio Jan. 25, 2006) ......................................... 12

SEC v. Downe,
    969 F. Supp. 149 (S.D.N.Y. 1997),
    aff'd sub nom., SEC v. Warde, 151 F.3d 42 (2d Cir. 1998) ................................................. 24

SEC v. U.S. Envit'l, Inc.,
    82 F. Supp. 2d 237 (S.D.N.Y. 2000) ........................................................................ 11

Smith v. Local 819 I.B.T. Pension Plan,
    291 F.3d 236 (2d Cir. 2002) ................................................................................ 12

Tatum v. Legg Mason Wood Walker, Inc.,
    83 F.3d 121 (5th Cir. 1996) ................................................................................ 14

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   127 S. Ct. 2499 (2007) .................................................................................................... 12

Vitanza v. Bd. of Trade of New York,
   No. 00-CV-7393, 2002 WL 424699 (S.D.N.Y. Mar. 18, 2002) ............................................. 8

## Statutes, Rules and Regulations

17 C.F.R. § 166.3 ................................................................................................... 19, 21, 22

7 U.S.C. § 1, et seq. ................................................................................................................. 3

7 U.S.C. § 2(a)(1)(B) ........................................................................................................ 15, 19

7 U.S.C. § 6b ..................................................................................................................... 19, 20

7 U.S.C. § 6(b) .................................................................................................................. 19, 20

7 U.S.C. § 9 ........................................................................................................................... 6, 7

7 U.S.C. § 13 ......................................................................................................................... 6, 8

7 U.S.C. § 13b ....................................................................................................................... 6, 7

7 U.S.C. § 13c(a) ...................................................................................................................... 21

7 U.S.C. § 13c(b) ......................................................................................................... 19, 20, 21

7 U.S.C. § 25 ...................................................................................................................... passim

7 U.S.C. § 25(a) .................................................................................................................. 6, 7, 8

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1, 12

Fed. R. Civ. P. 8(a) ........................................................................................................... passim

Fed. R. Civ. P. 9(b) ........................................................................................................... passim

## Other Authorities

Carl J. Nelson, Note, Hedge Fund Regulation: A Proposal to Maintain Hedge Funds'
   Effectiveness without SEC Regulation, 2 Brook. J. Corp. Fin. & Com. L. 221 (2007) ........... 4

H.R. REP. NO. 565, at 126, as reprinted in 1982 U.S.C.C.A.N., at 3975 .................................... 21

Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) .............................................................. 16

Defendant Amaranth LLC (the "Fund") respectfully submits this memorandum of law in support of its motion to dismiss with prejudice Plaintiffs' Corrected Consolidated Class Action Complaint dated February 14, 2008 (the "Complaint" or "Compl."), pursuant to Rules 12(b)(6), 9(b), and 8(a) of the Federal Rules of Civil Procedure.[1]  The Fund joins and incorporates by reference the arguments of all other defendants in their motions to dismiss to the extent applicable to the Fund.

## PRELIMINARY STATEMENT

### A.     Overview

The Fund should never have been named as a defendant in this matter.  The Fund is simply an entity created to pool individuals' money in one place so that it can be managed and invested by an appointed investment adviser.  The only control exercised by the investors is the decision to place their money in the investment vehicle.  After that initial decision is made, further investment decisions, including all of the transactions challenged in this lawsuit, are the responsibility of the investment adviser.  The investors and the Fund rely on the investment adviser to properly fulfill its role.  See Compl. ¶ 22 (the adviser "was the entity that directed the investments") (emphasis added); see also Goldstein v. SEC, 451 F.3d 873, 875 (D.C. Cir. 2006) ("[H]edge funds typically remain secretive about their positions and strategies, even to their own investors.").

The Fund's arrangement is not an unusual one.  Almost every investment pool is set up this way, from the most complicated hedge funds to the mutual funds held in the ordinary

---

[1] The named Plaintiffs in this action are Roberto Calle Gracey, John F. Special, Gregory H. Smith, Alan Martin, and DAX Partners (collectively, "Plaintiffs").  Plaintiff Gracey was also lead plaintiff in a similar class action in this district and represented by the same set of lawyers. In re Natural Gas Commodity Litig., 358 F. Supp. 2d 336, 336-37 (S.D.N.Y. 2005) (hereinafter, Natural Gas II).

investor's 401(k) plan.  See generally Goldstein, 451 F.3d at 876.

What is unusual is a lawsuit of any sort, whether under the securities laws or the Commodity Exchange Act ("CEA"), filed against a fund and the investors it represents.  Both regulatory agencies and the courts have long recognized that suing an investment fund for the actions of its trading adviser serves no valid deterrent or remedial purpose.  For example, based on a review of publicly available information, there is not one instance of the Securities and Exchange Commission ("SEC") penalizing a legitimate fund for the trading decisions of its investment adviser.  Or even more to the point, when the Commodity Futures Trading Commission ("CFTC") sued the Fund's investment adviser over the same conduct at issue in this case, it did not sue the Fund.  Complaint, CFTC v. Amaranth Advisors L.L.C., No. 07 Civ. 6682 (S.D.N.Y. July 25, 2007).[2]  Likewise, there are very few cases in which civil plaintiffs have sought to hold a fund of independent investors liable for the conduct of its independent investment adviser, and, in those cases identified by the Fund where it has been attempted, liability has not been imposed.  See, e.g., In re Fidelity/Micron Sec. Litig., 964 F. Supp. 539, 543-44 (D. Mass. 1997).  Based on the facts and law described herein, this lawsuit will not be any more successful than such predecessors.

    B.    Summary of Argument

Since Plaintiffs concede that the Fund did not act in this matter, it is not surprising that, even in a massive 78-page, 271-paragraph Complaint, the Fund is individually named only a handful of times.  Plaintiffs never identify any wrongful action taken by the Fund.  Instead,

---

[2] The Federal Energy Regulatory Commission ("FERC") has sought to bring an agency enforcement proceeding against the Fund and other Amaranth entities and traders.  However, that action is premised on the Energy Policy Act of 2005 and FERC regulations promulgated thereunder.  FERC's proceeding is not premised on the CEA, which is both the basis for Plaintiffs' action and the CFTC's lawsuit.

Plaintiffs rely on collective pleading, insisting that all of the individuals and entities with an "Amaranth" name formed a "tightly knit association-in-fact" and are all responsible for the alleged violations. (Compl. ¶¶ 29, 32.)

Based upon this barebones pleading of facts, Plaintiffs allege three counts against the Fund, each of which fails to state a claim as a matter of law. Count I contends that the Fund manipulated natural gas contracts on the New York Mercantile Exchange ("NYMEX") in violation of the CEA, 7 U.S.C. § 1, et seq. This claim fails because Plaintiffs allege no facts that show that the Fund was anything more than a passive investment pool, which by definition could not have engaged in the manipulation described in the Complaint.

Count II suggests that the Fund is liable under theories of aiding and abetting, vicarious liability, and controlling person liability. Plaintiffs' theories of secondary liability are no better than their direct approach. First, Plaintiffs' claim for aiding and abetting must fail because the Complaint is devoid of facts showing that the Fund knew of any alleged violations of the CEA or willfully assisted such violations. Second, Plaintiffs do not state a claim for vicarious liability because the Complaint does not sufficiently allege that the Fund was a principal with respect to the alleged manipulation. Third, Plaintiffs cannot bring a claim based on controlling person liability, because there is no private right of action for this theory under the CEA.

Plaintiffs' last claim against the Fund, unjust enrichment (Count V), fails for similar reasons. Plaintiffs do not plead facts showing that the Fund had a relationship with Plaintiffs that would support an unjust enrichment claim, nor do they allege that the Fund received any benefit at Plaintiffs' expense. Finally, because the Fund engaged in no wrongdoing, it would be inequitable to hold it liable for unjust enrichment.

Plaintiffs have failed to state a claim against the Fund under any provision of the CEA or

the common law.  Accordingly, the Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND

### A.    Parties

Plaintiffs bring this action on behalf of a purported class consisting of persons who purchased, held or sold NYMEX natural gas contracts, or options on natural gas futures contracts, between February 16 and September 28, 2006 (the "Class Period").  (Id. ¶¶ 16-21, 228.)  The Fund, a Cayman Islands company, is a multistrategy hedge fund that served as the Master Fund for three Defendant feeder funds:  Amaranth International Limited, a Bermuda company, and Amaranth Partners LLC and Amaranth Capital Partners LLC, Delaware limited liability companies (the "Feeder Funds").  (Id. ¶¶ 23, 26-27.)  Investors placed their money in one of the three Feeder Funds and those funds then pooled their assets in the Master Fund.  (Id. ¶ 23.)[3]

Defendant Amaranth Advisors L.L.C. ("Advisors"), a Delaware limited liability company, "directed the investments" for the Master Fund "and employed natural gas traders," pursuant to its Advisory Agreement with the Fund.  (Id. at ¶ 22.)  This Agreement "broadly empowered" Advisors to manage the Fund's investments, which Advisors has at all material times done.  (Id.)  Defendants Brian Hunter and Matthew Donohoe were the natural gas traders for Advisors who developed and executed the trading strategy alleged in the Complaint.  (Id. ¶¶ 30-31.)  All the individual Defendants were employed by either Amaranth Advisors (Calgary) ULC or Advisors during the relevant class period (id. ¶¶ 22, 29-31), and thus had no relationship,

---

[3] A hedge fund, like Amaranth LLC, is structured similarly to a U.S. domestic mutual fund.  In both cases, the funds themselves are "managed portfolios," meaning that investors contribute their money into a common pot—the fund—which is then invested by a professional trading adviser or manager.  See Carl J. Nelson, Note, Hedge Fund Regulation: A Proposal to Maintain Hedge Funds' Effectiveness without SEC Regulation, 2 Brook. J. Corp. Fin. & Com. L. 221, 231 (2007) ("Mutual funds . . . are substantially similar in form to hedge funds.").

employment or otherwise, with the Fund.

Plaintiffs concede that Advisors, the Fund, and the Feeder Funds are "legally distinct" organizations.  Nonetheless, Plaintiffs lump these entities, Maounis, Hunter, Donohoe, and other Amaranth entities together and collectively refer to them throughout the Complaint as "the Amaranth Defendants" or "Amaranth."  (Id. ¶ 33.)[4]

### B.     Allegations Against the Fund

Plaintiffs refer to the Fund no more than a handful of times during the course of their 78-page Complaint.  When examined closely, these statements fail to explain how the Fund could be liable.  First, Plaintiffs state that the Fund "held the manipulative positions in the NYMEX natural gas futures contracts at issue herein" (id. ¶ 23, see also id. ¶¶ 63, 245), although they are forced to concede that the Fund's role in doing so was merely "nominal" (id. ¶ 63).  Second, Plaintiffs confusingly allege that the Fund "controlled" Defendants (id. ¶ 255), was a "control[]" person" (id. ¶¶ 23, 255), was an "agent" of Defendants (id. ¶ 22), or was a principal responsible for the actions of Defendants who served as the Fund's agents (id. ¶ 23).  Plaintiffs offer nothing to support these conclusory and contradictory assertions.  Third, Plaintiffs make the accusation that the Fund "willfully aided, abetted, counseled, induced, or procured the commission of violations of the Commodity Exchange Act" (id. ¶ 245), without identifying a single willful action by the Fund.  The Fund's only "acts" identified in the Complaint are the passive actions of serving as a repository of financial assets (id. ¶ 23) and being the addressee of letters sent by

---

[4] As defined by Plaintiffs, the Amaranth Defendants include the Fund, Advisors, Amaranth Management Limited Partnership, Amaranth Group Inc., Amaranth International Limited, Amaranth Partners LLC, Amaranth Capital Partners LLC, Amaranth Advisors (Calgary) ULC, Nicholas M. Maounis, Hunter, and Donohoe (collectively referred to herein as "Defendants").

NYMEX concerning Advisors' trading patterns (id. ¶¶ 32, 147, 157, 161).[5]

Only three counts in the Complaint name the Fund.  In Count I, Plaintiffs charge the Fund with primary manipulation under the CEA, alleging that the Fund intentionally manipulated the prices of NYMEX natural gas contracts in violation of the CEA.  (Compl. ¶ 240.)  Count II alleges secondary liability under the CEA based on aiding and abetting, vicarious liability, and controlling person liability.  (Id. ¶¶ 245, 255.)  Finally, in Count V, Plaintiffs make a common law claim for unjust enrichment, alleging that the Fund financially benefited from unlawful acts. (Id. ¶¶ 267, 269.)

## ARGUMENT

I.   **THE COMPLAINT FAILS TO STATE A CLAIM FOR MANIPULATION UNDER THE COMMODITY EXCHANGE ACT AGAINST THE FUND (COUNT I).**

The Fund is not liable, as a matter of law, for manipulation of the natural gas futures market on the NYMEX.  As explained in more detail below, in order to establish a manipulation claim under the CEA, Plaintiffs must allege that the Fund knowingly and intentionally took affirmative steps to manipulate the market.  Plaintiffs concede that the Fund did not do anything at all; instead, it delegated all trading and strategy decisions to Advisors.  (Compl. ¶ 22.)  Thus, there can be no basis for a claim of direct market manipulation.

Plaintiffs assert their direct manipulation claims based on four different provisions of the CEA:  (1) Section 6(c), 7 U.S.C. § 9; (2) Section 6(d), 7 U.S.C. § 13b; (3) Section 9(a), 7 U.S.C. § 13; and (4) Section 22(a), 7 U.S.C. § 25(a).  (Compl. ¶ 240.)  With respect to their claims under

---

[5] Plaintiffs allege that the Fund "invested" monies received from investors.  (Id. ¶ 23.) Plaintiffs also correctly state that "Defendant Amaranth Advisors was the entity that directed the investments and employed the natural gas traders."  (Id. ¶ 22.)  Thus, when Plaintiffs state that the Fund "invested" money, it means that Advisors invested the Fund's money on behalf of the Fund's investors.  The Fund does not read Plaintiffs' Complaint to suggest that the Fund itself invested in anything, since the Fund is a passive pool of assets.

each provision of the CEA, Plaintiffs allege that Defendants, including the Fund, engaged in two different types of manipulative trading.  First, Plaintiffs allege that the Fund "intentionally" manipulated settlement prices of the expiring natural gas futures contracts on three specific dates.  (Id. ¶¶ 2(e), 5, 118, 125, 144.)  Second, they contend that the Fund "intentionally" caused artificial prices for all NYMEX natural gas contracts throughout the Class Period.  (Id. ¶¶ 6(a), 178-82.)  Both of these theories fail, no matter which provision of the CEA Plaintiffs choose to assert.

> **A.    The Complaint Fails to State a Claim Against the Fund Under Sections 6(c) and 6(d).**

As a threshold matter, any claims raised against the Fund under Sections 6(c) and 6(d) of the CEA fail as a matter of law because there is no private right of action under those sections.  See, e.g., Michelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 619 F. Supp. 727, 740 (S.D.N.Y. 1985) (no private right of action exists under Section 6(c) of the CEA).  Congress stated that Section 22 (and several sections not relevant here) contain "the exclusive remedies under this chapter available to any person who sustains loss as a result of any alleged violation of this chapter."  7 U.S.C. § 25(a)(2).  Indeed, the statutory text of Sections 6(c) and 6(d) demonstrates that they only apply to claims brought by the CFTC.  See 7 U.S.C. § 9 (Section 6(c)) (discussing the ability of the "Commission" to bring an action for manipulation or attempted manipulation of the market price of any commodity); 7 U.S.C. § 13b (Section 6(d)) (discussing the ability of the "Commission" to enter a cease-and-desist order against any person manipulating or attempting to manipulate the price of any commodity).  Accordingly, Count I fails to state a cause of action against the Fund under Section 6(c) or 6(d) of the CEA.[6]

--------

[6] Nor can Plaintiffs imply a private right of action somehow exists under any of these sections.  The adoption of Section 22 of the CEA in 1982 supplanted and precluded all implied

**B.    Plaintiffs Lack Standing Under the Other
      Named Sections of the CEA to Assert Claims
      Based on Manipulation of Settlement Prices.**

Plaintiffs have no standing to assert a claim based on manipulation of the settlement

prices of the March, April and May 2006 NYMEX natural gas contracts in violation of CEA

Sections 9(a) and 22(a).  (See Compl. ¶¶ 2(e), 5, 118, 125, 144); see also Vitanza v. Bd. of Trade

of New York, No. 00-CV-7393, 2002 WL 424699, at *4-5 (S.D.N.Y. Mar. 18, 2002).[7]  With

respect to this argument, the Fund concurs with the Memorandum of Law in Support of Motion

to Dismiss the Corrected Consolidated Class Action Complaint by Defendants Amaranth

Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Capital Partners LLC, Amaranth

Group Inc., Amaranth Management Limited Partnership, and Amaranth Partners LLC

("Advisors Mem.") and refers the Court to that brief to assert that Plaintiffs lack standing to

press a claim based on manipulation of settlement prices.

**C.    Plaintiffs' Broader Market Manipulation Theory
      Brought Under Sections 9(a) and 22(a)
      Fails to Satisfy Any Pleading Standard.**

While avoiding a standing problem, Plaintiffs' other theory of manipulation—that the

Fund "intentionally" caused artificial prices for all NYMEX natural gas contracts throughout the

Class Period—is still hopelessly defective.  (See Compl. ¶ 178.)  To state a claim for

manipulation, Plaintiffs must show the following: (1) the defendant possessed an ability to

influence market prices; (2) an artificial price existed; (3) the defendant caused the artificial

---

causes of action under other sections of the CEA.  Am. Agric. Movement v. Bd. of Trade of
Chicago, 977 F.2d 1147, 1153 (7th Cir. 1992).

[7] Because Plaintiffs do not have standing to pursue a manipulation claim against the Fund
premised on settlement prices, any secondary liability claims raised in Count II of Plaintiffs'
Complaint must be premised on Plaintiffs' theory that the Fund manipulated all natural gas
contracts on the NYMEX during the Class Period.

price; and (4) the defendant specifically intended to cause the artificial price.  In re Crude Oil

Commodity Litig., No. 06 Civ. 6677, 2007 WL 1946553, at *3 (S.D.N.Y. June 28, 2007).  With

respect to the Fund, an entity that made no trading decisions at all, the Complaint fails to allege

any of these elements with the detail required under either Rule 9(b) or 8(a).[8]

1.    Rule 9(b) Requires Facts Specific to Each
      Defendant to Be Pled with Particularity.

Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).[9]  A

complaint alleging market manipulation cannot satisfy Rule 9(b) unless it states "with

particularity the nature, purpose, and effect of the fraudulent conduct and the roles of the

defendants."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 102 (2d Cir. 2007) .  In

other words, the complaint must allege "what manipulative acts were performed, which

defendants performed them, when the manipulative acts were performed, and what effect the

---

[8] The Complaint also fails to allege any of these elements with respect to any claimed manipulation of settlement prices.  Thus, even if the Court were to find that Plaintiffs had standing to bring a CEA claim for manipulation of settlement prices, Plaintiffs have alleged nothing against the Fund that would support such a theory under either Rule 9(b) or Rule 8(a) as discussed infra.

[9] As set forth in Advisors' Memorandum, Plaintiffs' CEA manipulation claim against the Fund is subject to Federal Rule of Civil Procedure 9(b).  See Advisors Mem. at Section II.A.  An examination of the Complaint demonstrates that Plaintiffs' allegations are premised on fraud.  Plaintiffs' manipulation claims hinge on the alleged deception of investors as to the proper value of the natural gas contracts at issue.  (See, e.g., Compl. ¶ 239 (alleging that each Defendant engaged in the alleged trading misconduct to "move or support the prices of NYMEX natural gas contracts to or at artificial levels") (emphasis added); see also id. ¶ 2.)  Moreover, Plaintiffs allege that Defendants "concealed their manipulative trading from regulators and market participants by, among other acts, misrepresenting facts and positions . . . ."  (Id. ¶ 2(d) (emphasis added).)  They also claim that Defendants "confused the natural gas markets . . . and caused Class members to transact at artificial prices."  (Id. ¶ 11 (emphasis added).)  Accordingly, Plaintiffs' manipulation claims are subject to the heightened pleading requirements of Rule 9(b).  In order to avoid duplicating that argument, the Fund refers the Court to Advisors' briefing on that subject and joins it in its entirety.

scheme had on the market for the securities at issue." Id. (internal quotation marks and citation omitted).

Where Plaintiffs "cannot point to one specific instance in which defendants or their agents" engaged in manipulative acts, their case cannot go forward under Rule 9(b). In re Crude Oil, 2007 WL 1946553, at *6. In short, Rule 9(b) is not "satisfied by a complaint in which defendants are clumped together in vague allegations" because the allegations must be attributed to a particular defendant. Lesavoy v. Lane, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004) (internal quotation marks and citation omitted). With respect to multiple defendants, "[b]road allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b)." Kolbeck v. LIT America, 923 F. Supp. 557, 569 (S.D.N.Y. 1996), aff'd, 152 F.3d 918 (2d Cir. 1998). In particular, to plead fraud, it is "not permissible" to group defendants under a single label. FDIC v. FSI Futures, Inc., No. 88 Civ. 0906, 1990 U.S. Dist. LEXIS 2907, at *27 (S.D.N.Y. Mar. 13, 1990) (in that case, "broker defendants"). Instead, a "well-pleaded complaint must not only separate the deeds of the different defendants but clearly identify the fraudulent omissions or misrepresentations of which they are accused." Id.; see also Grossman v. Citrus Assocs. of N.Y. Cotton Exch., Inc., 706 F. Supp. 221, 232 (S.D.N.Y. 1989) (dismissing plaintiffs' CEA claim under Rule 9(b) where "[t]he amended complaint simply sa[id] nothing about [the defendant], except in the most general of terms in those 'kitchen sink' portions of the pleading where everyone is alleged to have done everything in violation of the [CEA]").

　　2.　　Plaintiffs Do Not Plead Market Manipulation
　　　　　with the Requisite Particularity Under Rule 9(b).

Plaintiffs' claim of market manipulation fails against the Fund under Rule 9(b) because

Plaintiffs do not identify any act of manipulation taken by the Fund, relying on vague allegations lumped against all Defendants to support their theory of manipulation.

The Complaint contains only a handful of references to the Fund, and none of them demonstrate—or even vaguely suggest—that the Fund willfully manipulated NYMEX natural gas contracts.  The Complaint notes that the Fund "held the manipulative positions in the NYMEX natural gas futures contracts at issue herein" (Compl. ¶ 23, <u>see also</u> <u>id.</u> ¶¶ 63, 245), but in doing so it concedes that the Fund's role was merely "nominal."  (<u>Id.</u> ¶ 63.)  The only other relevant fact about the Fund mentioned in the Complaint is that it was the addressee of letters sent by NYMEX concerning Advisors' trading patterns (<u>id.</u> ¶¶ 32, 147, 161).  Serving as a nominal repository for assets and being addressed a letter has nothing to do with an allegation of a market manipulation.  In order to satisfy Fed. R. Civ. P. 9(b), Plaintiffs' market manipulation claim must specify what manipulative acts were performed, which Defendants performed them, when the acts were performed, and what effect the scheme had on the market for the securities at issue.  <u>See</u> <u>Natural Gas II</u>, 358 F. Supp. 2d at 343 (quoting <u>SEC v. U.S. Envit'l, Inc.</u>, 82 F. Supp. 2d 237, 240 (S.D.N.Y. 2000)).  The Complaint fails to do that with respect to the Fund.

Recognizing their inability to identify specific facts with respect to the Fund, Plaintiffs seek to lump the Fund together with other Defendants who are alleged to have manipulated the price of natural gas futures.  Plaintiffs recognize that the Amaranth organizations are "legally distinct" entities.  (Compl. ¶ 32.)  Even so, they amalgamate the Fund and other Defendants together under the label "Amaranth" and state, without any factual support, that Defendants "are in practice a tightly knit association-in-fact" (Compl. ¶¶ 32, 33).  As discussed above, Rule 9(b) is not satisfied in a situation where plaintiffs make "[b]road allegations that several defendants participated in a scheme."  <u>Kolbeck</u>, 923 F. Supp. at 569.  Indeed, under Rule 9(b) it is "not

permissible" to group defendants under a single label (e.g., "Amaranth Defendants"), and plaintiffs must clearly identify each defendants' role in the alleged misconduct.  <u>FSI Futures, Inc.</u>, 1990 U.S. Dist. LEXIS 2907, at \*27; <u>see also</u> <u>Kolbeck</u>, 923 F. Supp. at 569.  For these reasons, Plaintiffs' collective pleading approach to the manipulation claim against the Fund fails to meet the standard articulated under Rule 9(b) and must be dismissed with prejudice.

> 3.    Even Under a More Relaxed Pleading Standard,
>       Plaintiffs Fail in Count I to State a Claim for
>       Which Relief Can Be Granted Against the Fund.

Even if the Court were to determine that Rule 9(b) was not applicable to Plaintiffs' claims in Count I, Plaintiffs still fail to state a claim for manipulation against the Fund.  Faced with a Rule 12(b)(6) motion to dismiss for failure to plead a claim on which relief can be granted, courts must accept all factual allegations in the complaint as true.  <u>See</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 127 S. Ct. 2499 (2007).  However, plaintiffs' obligation "to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks omitted).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  <u>Smith v. Local 819 I.B.T. Pension Plan</u>, 291 F.3d 236, 240 (2d Cir. 2002).  Indeed, the notice pleading requirement of Rule 8(a) demands that the plaintiff provide each defendant notice of the claims against it.  <u>See</u> <u>Rudd v. KeyBank, N.A.</u>, No. C2-05-CV-0523, 2006 WL 212096, at \*3 (S.D. Ohio Jan. 25, 2006) (dismissing complaint where plaintiff made identical allegations against all of the defendants because, in part, plaintiff's failure to "assert any details specifically against each individual defendant" did not provide each defendant with proper notice as required by Federal Rule of Civil Procedure 8(a)(2)); <u>cf.</u> <u>Parker v. Brush Wellman, Inc.</u>, 377 F. Supp. 2d 1290, 1294 (N.D. Ga. 2005) ("In multiparty litigation . . . the

Federal Rules do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of <u>each</u> defendant giving rise to his claims.") (emphasis in original).

As discussed <u>supra</u>, because Plaintiffs have failed to allege even the most elementary facts to support a claim of manipulation as to the Fund, and do not provide the Fund with <u>any</u> notice of the manipulation claim against it, Count I fails to state a claim for relief and should be dismissed with prejudice.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING, VICARIOUS LIABILITY, OR CONTROLLING PERSON LIABILITY AGAINST THE FUND UNDER THE COMMODITY EXCHANGE ACT (COUNT II).

Likewise, the Fund is not liable, as a matter of law, for alleged manipulation of NYMEX natural gas contracts under any of Plaintiffs' theories of secondary liability:  aiding and abetting, vicarious liability, or control person liability.  As explained below, the aiding and abetting and vicarious liability claims in Count II fare no better than the primary manipulation claims in Count I because Plaintiffs do not allege facts about the Fund that come close to supporting any of these theories, particularly when scrutinized under Rule 9(b).  With respect to Plaintiffs' control person liability claim, that theory fails for the simple reason that there is no private right of action for control person liability under the CEA.

### A.    Plaintiffs' Aiding and Abetting Claim Against the Fund Fails.

Plaintiffs' conclusory allegations that the "Amaranth Defendants . . . knowingly aided, abetted, counseled, induced, and/or procured the violations of the CEA alleged herein" (Compl. ¶ 253) and "willfully intended to assist the manipulation" (<u>id.</u> at ¶ 254) do not satisfy the standards of Rule 9(b), or even the more lenient pleading standards of Rule 8(a).  <u>See</u> <u>Natural Gas II</u>, 358

F. Supp. 2d at 343 (applying Rule 9(b) to a CEA aiding and abetting manipulation claim); <u>see also</u> <u>Krause v. Forex Exchange Mkt.</u>, 356 F. Supp. 2d 332, 338 (S.D.N.Y. 2005) ("Rule 9(b) also applies to [CEA] claims of aiding and abetting fraud.").[10]

Under Rule 9(b), courts stress that "a plaintiff seeking to state a cause of action for aiding and abetting liability under § 22 of the CEA must allege that the aider and abettor acted knowingly." <u>Damato v. Hermanson</u>, 153 F.3d 464, 472 (7th Cir. 1998).  In other words, it is not sufficient to show that an entity knowingly <u>associates</u> itself with a primary violator of the CEA; rather, Plaintiffs must allege that the "aider and abettor <u>knowingly assists</u> the principal in the attainment of the illegal objective." <u>Id.</u> (emphasis added).  In addition, "an aider and abettor must not only know of the principal's violation of law, they must willfully assist in the violation and share the principal's intent." <u>Benfield v. Mocatta Metals Corp.</u>, No. 91-Civ-8255, 1992 WL 58879, at *6 (S.D.N.Y. Mar. 13, 1992).  In <u>Benfield</u>, the court found that, standing alone, "numerous allegations stating that defendants 'knew of' or were 'aware' of [the alleged misconduct] . . . would be insufficient to establish the intent necessary for aiding and abetting liability under the CEA." <u>Benfield v. Mocatta Metals Corp.</u>, No. 91-Civ-8255, 1992 WL 177154, at *3 (S.D.N.Y. July 13, 1992) (dismissing claims for aiding and abetting for failure to satisfy Rule 9(b)).

Besides a conclusory allegation that the Fund "knowingly" aided and abetted (Compl. ¶ 253), Plaintiffs fail to allege <u>any</u> facts that would support the claim that the Fund acted with knowledge.  Nor do Plaintiffs allege that the Fund intended to further the purported trading

---

[10] If the Court dismisses Plaintiffs' primary manipulation claims against Defendants, the Court's inquiry ends with respect to aiding and abetting liability.  <u>See</u> <u>Tatum v. Legg Mason Wood Walker, Inc.</u>, 83 F.3d 121, 123 n.3 (5th Cir. 1996) ("In order to recover damages from a secondary party in an action for 'aiding and abetting' liability under the Commodity Exchange Act, a plaintiff must first prove that a primary party committed a commodities violation.").

misconduct or shared the primary violator's intent.  Because Plaintiffs fail to allege any facts to support these elements as to the Fund, their aiding and abetting claim fails as a matter of law.

In addition, even if the Court were to find that Rule 9(b) did not apply to Plaintiffs' aiding and abetting claim, Plaintiffs still have failed to state an aiding and abetting claim under Rule 8(a)'s notice pleading standard.  Plaintiffs' conclusory allegations fall far short of providing "direct or inferential allegations respecting all the material elements to sustain a recovery," as required by Rule 8(a).  In re Natural Gas Commodity Litig., 337 F. Supp. 2d 498, 508 (S.D.N.Y. 2004) (hereinafter, "Natural Gas I"); see also Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001).  Accordingly, under any standard of evaluating the Complaint, the claims for aiding and abetting liability against the Fund must be dismissed with prejudice.

### B. Plaintiffs Fail to Plead a Claim for Vicarious Liability Against the Fund.

Plaintiffs' vicarious liability claim, pled pursuant to CEA, Section 2(a)(1)(B), 7 U.S.C. § 2(a)(1)(B), is as infirm as their aiding and abetting claim described above.  As a result of Plaintiffs' defective pleading, the vicarious liability claims should be dismissed with prejudice pursuant to Rule 9(b), or in the alternative, Rule 8(a).[11]  See Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp. v. Sirmer, No. 89-C-2239, 1989 WL 165155, at *6 (N.D. Ill. Dec. 27, 1989) ("Because the objectives underlying Rule 9(b) apply with equal force to allegations against the employer of a violator, this court will examine the derivative liability claim in light of the particularity requirements of Rule 9(b)."); see also Kolbeck, 923 F. Supp. 557, 569.

Plaintiffs allege that the Fund is liable because it is a "principal" responsible for the conduct of its "agents," Advisors and Advisors employees.  The elements of an agency

---

[11] If the Court dismisses Count I, there can be no vicarious liability as to the Fund.  See Kolbeck, 923 F. Supp. at 570 (dismissing claim against the principal for violation of CEA where plaintiffs failed to adequately allege cause of action against the agent).

relationship are: "(i) the manifestation by the principal that the agent shall act for him; (ii) the agent's acceptance of that undertaking; and (iii) the understanding of the parties that the principal is to be in control of the undertaking." Cleveland v. Caplaw Enters., 448 F.3d 518, 522 (2d Cir. 2006). "[V]ague assertions of agency—whether described as agency by apparent authority, ratification, or estoppel—do not put defendants on notice of the claims against them, or enable them to prepare a defense." Kolbeck, 923 F. Supp. at 570.

Plaintiffs allege none of the elements of an agency relationship with respect to the Fund. In particular, Plaintiffs make no showing that the Fund exercised control over Advisors, or any other Defendant. See Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) ("An essential element of agency is the principal's right to control the agent's actions."). In this case, Plaintiffs state that "Advisors was the entity that directed the investments and employed the natural gas traders under the Advisory Agreement between Amaranth LLC and Amaranth Advisors." (Id. ¶ 22) (emphasis added.) [12]  Conceding that a lone entity "directed" the investments, Plaintiffs recognize that the Fund did not control any of the trading at issue in this case. Therefore, Plaintiffs have failed to plead the existence of an agency relationship with Advisors.

Not only are Plaintiffs unable to allege facts to support a vicarious liability claim, but as the Fidelity court observed, it makes little sense to use vicarious liability in the context of the relationship between a fund and its investment adviser. In Fidelity, the court dismissed plaintiffs' effort to hold a mutual fund vicariously liable under the securities laws for allegedly false statements made by the fund's investment adviser. Fidelity, 964 F. Supp. at 544. In that case, the court was persuaded that holding a mutual fund liable for the actions of its trading

---

[12] The existence of the Advisory Agreement, without a showing of control, is insufficient to support a principal-agent relationship between Advisors and the Fund.

adviser was improper because the mutual fund at issue was "a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to individual investors holding shares in the fund." Id. at 543 (internal citation omitted).  The court further observed that the "management of this asset pool is largely in the hands of an investment adviser, an <u>independent</u> entity which generally organizes the fund and provides it with investment advice, management services, and office space and staff." Id. (emphasis added).  As in <u>Fidelity</u>, Advisors executed independent judgment over the trading at issue in this case, which in no way involved the Fund.  (<u>See</u> Compl. ¶ 22.)  For these same reasons, as in <u>Fidelity</u>, Plaintiffs' vicarious liability claim against the Fund should be dismissed.

As a seemingly last resort, Plaintiffs fall back upon vague generalities, failing even to allege who specifically was the Fund's agent or if the Fund was itself an agent.  (<u>See</u> Compl. ¶¶ 23, 238, 239, 255.)  The Complaint states that the parties undertook the alleged misconduct as "one another's control persons or agents" and asserts that each "<u>Amaranth Defendant</u> or its control person or agent" engaged in manipulation.  (<u>Id.</u> ¶¶ 238-39 (emphasis added).)  It claims that "<u>Amaranth</u>—per the trading decisions of Nicholas Maounis, Brian Hunter, Matthew Donahoe and other <u>Amaranth</u> agents and control persons—held and steadily added to massive natural gas contract positions on NYMEX and ICE." (<u>Id.</u> ¶ 73 (emphasis added).)  It further claims that Amaranth LLC and others "are also liable . . . for the acts of their official, agents, and other person acting within the scope of their employment or office, including the <u>Amaranth Defendants</u>." (<u>Id.</u> ¶ 23 (emphasis added).)  The terms "<u>Amaranth Defendants</u>" and "<u>Amaranth</u>," in turn, include the very same parties that are alleged to have been principals to the transactions in question.  Similarly ambiguous recitations of vicarious liability are made against each Defendant.  (<u>See</u> <u>id.</u> ¶¶ 22-31.)

These circular propositions are not sufficient under Rule 9(b) to state a principal-agent relationship.  The fact that Defendants share "Amaranth" as part of their name is not enough to establish that these "legally distinct entities" (id. ¶ 32) are each other's agents.  See In re AM Int'l Inc. Sec. Litig., 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing complaint against Price Waterhouse entities outside of the United States after rejecting arguments that all Price Waterhouse affiliates worldwide were "in fact one entity, and acted as agents of one another"); see also Kolbeck, 923 F. Supp. at 569 (citations omitted).  Because Plaintiffs' vicarious liability claim is based on little more than broad allegations that Defendants are guilty because of their associations with others, their vicarious liability claim must be dismissed under Rule 9(b).

On this point, the court's decision in Natural Gas I is especially instructive.  In that case, the plaintiffs alleged that parent company defendants were vicariously liable under the CEA for the acts of their subsidiaries.  Natural Gas I, 337 F. Supp. 2d at 514-516.  The plaintiffs argued that vicarious liability could be established solely on the basis of the parent companies' ownership of their subsidiaries.  Id. at 515, 516.  The parent companies responded by noting that plaintiffs were alleging a veil piercing type-claim under the rubric of "vicarious liability," which required that they show the principal had "actual domination" over its subsidiary.  Id. at 515.

Here, Plaintiffs have put forward no facts alleging how the Fund could be a principal with respect to any of the Amaranth Defendants.  See supra at 16, 17.  In failing to do so, as in Natural Gas I, Plaintiffs are forced to couch their vicarious liability allegations against the Fund in an opaque veil piercing-like manner, contending that Defendants acted as a "tightly knit association-in-fact" that worked as a "collective unit." (See Compl. ¶ 32.)  In responding to a near-identical argument in Natural Gas I, the court said:

> [T]he Court cannot ignore the equally well-established principles limiting
> piercing a corporate veil.  Plaintiffs have not identified, nor has the Court

> located, any case in which corporate parents were held liable for the
> actions of their corporate subsidiaries under § 2(a)(1)(B).  Rather, it
> appears that § 2(a)(1)(B) has been used as the doctrine of respondeat
> superior has traditionally been applied – to hold employers liable for the
> wrongs of their employees in certain situations.

Natural Gas I, 337 F. Supp. 2d at 515.

Much like in Natural Gas I, however, the Court does not need to resolve the limits of

Section 2(a)(1)(b) and whether it could support a vicarious liability claim sounding in veil

piercing.  As in that case, the court pursuant to Rule 8(a) dismissed the claims against the parent

companies, solely on the basis of the fact that the complaint contained insufficient allegations to

support any type of vicarious liability.  Id. at 516.

Similarly here, even if Rule 9(b) were not to apply to Plaintiffs' vicarious liability

argument, Plaintiffs' fail to state a claim of vicarious liability under Rule 8(a).  Stating that the

Fund, as a mere repository for the trading positions, is liable for the trading decisions of Advisors

is similar to the plaintiffs in Natural Gas I arguing that a parent corporation would be liable for

its subsidiary's actions merely because it owned the subsidiary.  Such an argument was rejected

by that court and should be rejected here.  Natural Gas I, 337 F. Supp. 2d at 515-16 (holding that

"[s]uch is not the stuff of an adequate complaint").

### C.  There Is No Private Right of Action for Controlling Person Liability Under the Commodity Exchange Act.

Plaintiffs' last theory of secondary liability, alleged under the CEA's "control person"

statutes (see Compl. ¶ 23, 255) fails because the CEA does not provide a private right of action

based on control person liability.[13]

---

[13] Plaintiffs cite to CEA Section 4(b), 7 U.S.C. § 6(b), pursuant to CEA Section 13(b), 7
U.S.C. § 13c(b), and CFTC Rule 166.3, 17 C.F.R. § 166.3 in support of their control person
allegations.  Section 4(b) relates to the regulation of foreign transactions by the CFTC.  7 U.S.C.
§ 6(b).  The Fund believes that Plaintiffs may have mistakenly cited Section 4(b), in lieu of
Section 4b, 7 U.S.C. § 6b.  To the extent Plaintiffs are relying on Section 4b, their claim fails

1.    Section 13(b) of the Commodity Exchange Act
Does Not Provide a Private Right of Action.

Plaintiffs' claim for controlling person liability pursuant to Section 13(b), 7 U.S.C. §

13c(b), flouts the explicit language of the statute and well-established case law, which holds that

"[t]here exists no private right of action under Section 13(b) of the CEA."  Michelson, 619 F.

Supp. at 739; see also 7 U.S.C. § 13c(b) ("Any person, who directly or indirectly, controls any

person who has violated the provisions of this chapter or any of the rules, regulations, or orders

issued pursuant to this chapter may be held liable for such violation in an action brought by the

Commission.") (emphasis added).  In Michelson, the court noted that this section

"unambiguously provides for an administrative forum, that is, the Commodity Futures Trading

Commission, to impose sanctions upon principals who control agents engaging in prohibited

activity."  Id. at 739; see also Champ v. Siegel Trading Co., No. 89-C-7148, 1990 WL 19984, at

*6 (N.D. Ill. Feb. 27, 1990) (dismissing a claim for "control person" liability under 7 U.S.C. §

13c(b) [Section 13(b)], citing Michelson for the proposition that "there is no private right of

action under that statute").

In addition, courts have found that limiting the relief under Section 13(b) to actions

brought by the CFTC is consistent with congressional intent.  Notably, "when Congress did not

wish to limit a remedy to an action brought only by the CFTC, it made its intention clear by

affirmatively deleting such restrictive language."  Fustok v. ContiCommodity Servs., Inc., 618 F.

---

because that provision has no relevance to the instant proceeding.  Section 4b is the antifraud
provision of the CEA and does not create a private right of action for controlling person liability.
Section 22 restricts actions for controlling person liability to CFTC enforcement actions.
Plaintiffs' attempt to end run Section 22 by alleging that a private cause of action for controlling
person liability exists under CEA Section 4b "pursuant to CEA Section 13(b)" fails because, as
discussed infra, Section 13(b) also does not create a private right of action for controlling person
liability.  To the extent Plaintiffs are independently alleging a direct claim against the Fund
pursuant to Section 4b, such a claim fails for the reasons stated in Advisors' briefing.  Advisors
Mem. at 27 n. 19.

Supp. 1069, 1073 (S.D.N.Y. 1985) (comparing, inter alia, CEA § 13(a), 7 U.S.C. § 13c(a) (1976) with CEA § 13(a), 7 U.S.C.A. § 13c(a) (Supp. 1985) (deleting provision that restricts relief for aiding and abetting to "administrative proceedings")). Pertinent legislative history shows that "Congress did not intend derivative liability actions of this nature to be brought by private citizens." Fustok, 618 F. Supp. at 1073. In fact, "Congress rejected the version of the controlling persons provision which was advocated by the CFTC that would have imposed a broader scope of liability than the statute in its present form." Id. (citing H.R. REP. NO. 565, at 126, as reprinted in 1982 U.S.C.C.A.N., at 3975). Accordingly, because there is no private right of action under Section 13(b), Plaintiffs have failed to state a claim for which relief can be granted.

> **2.    There Is No Private Action for**
> **Violations of CFTC Rule 166.3.**

Similarly, Plaintiffs cannot avail themselves of CFTC Rule 166, 17 C.F.R. § 166.3, as a basis for liability against the Fund because it does not give rise to a private cause of action. In Fustok v. ContiCommodity Services Inc., the court held that "a private right of action under Rule 166.3 may not be implied." Fustok, 618 F. Supp. 1069, 1073-74 (S.D.N.Y. 1985); see also CFTC v. Carnegie Trading Group Ltd., 450 F. Supp. 2d 788, 805 (N.D. Ohio 2006) (noting that "Rule 166.3 does not create a private right of action"); Baghdady v. Robbins Futures, Inc., No. 97-C-8794, 1999 WL 162789, at *7 (N.D. Ill. Mar. 12, 1999) (dismissing claim brought under Rule 166.3 because "Congress did not intend that the rules promulgated by the CFTC should give rise to a private cause of action"). In fact, other district courts in this Circuit concur that "[t]here is no private action for violations of CFTC rules." Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 179 F. Supp. 2d 118, 158 (S.D.N.Y. 2000) (granting summary judgment on a claim alleging a violation of a CFTC rule); see also Nicholas

21

v. Saul Stone & Co. LLC, No. Civ. 97-860, 1998 WL 34111036, at *18 (D.N.J. June 30, 1998),

aff'd, 244 F.3d 179 (3d Cir. 2000) ("Courts have consistently held that Section 22 does not

create any private remedy for purported violations of CFTC Regulations."). The absence of a

private right of action under Rule 166.3 precludes Plaintiffs' assertion of controlling person

liability against the Fund.

### III.    PLAINTIFFS' CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM (COUNT V).[14]

Plaintiffs' common law unjust enrichment claim against the Fund does not merit much

discussion, as it relies on a conclusory statement unsupported by the requisite factual allegations.

Plaintiffs merely assert that "Defendants financially benefited from their unlawful acts. These

unlawful acts caused Plaintiffs and other members of the class to suffer injury, lose money, and

transact natural gas contracts at artificial prices." (Compl. ¶ 267.) However, under New York

law, "A cause of action for unjust enrichment requires a showing that (1) the defendant was

enriched, (2) at the expense of the plaintiff, and (3) it would be inequitable to permit the

defendant to retain that which is claimed by the plaintiff." Clifford R. Gray, Inc. v. Le Chase

Constr. Servs., LLC, 31 A.D.3d 983, 987-88 (3d Dep't 2006). The Complaint fails to allege

facts to support any of these elements as to the Fund, and therefore Plaintiffs' unjust enrichment

claim must be dismissed.[15]

---

[14] Because this litigation is still in its early stages, should the Court dismiss Counts I and II against the Fund, the Court should refuse to exercise supplemental jurisdiction over Plaintiffs' state law unjust enrichment claim. See Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006).

[15] Plaintiff's unjust enrichment claim is also preempted by the CEA. With respect to this argument, the Fund concurs with Amaranth International Limited's ("AIL") Memorandum of Law in Support of its Motion to Dismiss the Corrected Consolidated Class Action Complaint. In order to avoid duplicating that argument, the Fund refers the Court to AIL's briefing on that subject and joins it in its entirety.

First, Plaintiffs' claim must fail because they do not allege that a "substantive relationship" existed between Plaintiffs and the Fund.  "[A]n unjust enrichment claim, which is a quasi-contract claim, requires some type of direct dealing or actual, substantive relationship with a defendant."  Reading Int'l v. Oaktree Capital Mgmt., 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003) (internal quotation marks and citation omitted); see also Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc., 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998), aff'd, 173 F.3d 845 (2d Cir. 1999) (Scheindlin, J.) (stating that although there need not be an express contract between the parties, to sustain an unjust enrichment claim, there must be a legally cognizable relationship between them); Czech Beer Imps., Inc. v. C. Haven Imps., LLC, No. 04 Civ. 2270, 2005 WL 1490097, at *7 (S.D.N.Y. June 23, 2005).  Plaintiffs have not alleged the existence of any sort of contractual or quasi-contractual relationship with the Fund.  Indeed, Plaintiffs have not alleged any relationship between the Fund and Defendants.  On this basis alone, Plaintiffs' unjust enrichment claim should be dismissed against the Fund.

Second, Plaintiffs' unjust enrichment claim fails because the Complaint does not allege that the Fund is in possession of money or property that does not rightfully belong to it, or that Plaintiffs were counterparties to any of the transactions on the NYMEX that the Fund allegedly benefited from.  See In re Bayou Hedge Fund Inv. Litig., 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007) (dismissing unjust enrichment claim where, aside from a conclusory statement that the defendants were unjustly enriched, the complaint did not plead that defendants received any money from the plaintiffs during the class period).  Cf. CompuDyne v. Shane, 453 F. Supp. 2d 807, 833 (S.D.N.Y. 2006) (dismissing unjust enrichment claim where, inter alia, plaintiffs were not counterparties to the transactions from which defendants allegedly benefited).  The Complaint contains no allegation that the Fund received a benefit at Plaintiffs' expense.  Nor

does Plaintiffs' recitation of facts support a finding of general manipulation of market prices adequate to allege that the enrichment came at Plaintiffs' expense.  See Mina Invest. Holdings Ltd. v. Lefkowitz, 51 F. Supp. 2d 486, 490 (S.D.N.Y. 1999) (holding that the plaintiffs' factual allegation of a general dilution in value of plaintiffs' warrants (owing to the defendants' unlawful acts) was not sufficient to allege that the enrichment came at the plaintiff-shareholders' expense).

Third, it would be inequitable for the Court to order disgorgement against the Fund, and through the Fund, the Fund's shareholders.  As this Court recognized in the closely analogous securities context, "The equitable remedy of disgorgement is designed to deprive a wrongdoer of his unjust enrichment from illicit trading in securities and to deter others from violating the securities laws."  SEC v. Downe, 969 F. Supp. 149, 157 (S.D.N.Y. 1997), aff'd sub nom., SEC v. Warde, 151 F.3d 42 (2d Cir. 1998) (Scheindlin, J.) (emphasis added); see also Louis Vuitton Malletier v. Dooney & Bourke, 500 F. Supp. 2d 276, 282 (S.D.N.Y. 2007) (Scheindlin, J.) (holding that, in the trademark infringement context, "in order for the defendant's enrichment to be 'unjust' . . . it must be the fruit of willful deception") (citing George Basch & Co. v. Blue Coral, Inc., 968 F.2d 1532, 1538 (2d Cir. 1992)) (internal quotation marks omitted).  The Fund is not a "wrongdoer" and holding it liable would serve no deterrent purpose.  Rather, the Fund is merely a pool of capital representing passive investors who, as the Complaint acknowledges, have already suffered considerable losses.  (Compl. ¶¶ 170-71.)

Courts have recognized that it is illogical to hold a fund responsible for actions outside of its control.  See In re Fidelity, 964 F. Supp. at 543-44.  Moreover, extending liability to a passive investment fund for the actions of its trading adviser, if successful, would present significant consequences for the United States' capital markets and the individuals and institutions who invest in them.  This extension of liability would expose passive investors in mutual funds

(including 401(k) accounts) to the risk that their investments could be docked by damages assessed against investment managers over whom they have no control. Public policy that favors allowing investors to use knowledgeable professionals to manage their savings militates against turning these investors into the guarantors of last resort for the damages resulting from fund managers' alleged trading misconduct. For all these reasons, it would not be equitable to order disgorgement against the Fund.[16]

## CONCLUSION

For these reasons, Amaranth LLC respectfully requests that this Court dismiss the Complaint with prejudice as to the Fund.[17]

Dated:   New York, New York
         April 28, 2008

                                        Respectfully Submitted,


                                        /s/  Amelia T.R. Starr
                                        _____
                                        Amelia T.R. Starr
                                        Sheldon L. Pollock
                                        Dharma B. Frederick
                                        DAVIS POLK & WARDWELL
                                        450 Lexington Avenue
                                        New York, New York 10017
                                        Tel: (212) 450-4000
                                        Fax: (212) 450-3800

                                        *Counsel for Amaranth LLC*

---

[16] Because Plaintiffs' fail to state a claim for unjust enrichment, their request for the imposition of a constructive trust also fails. Modica v. Modica, 791 N.Y.S.2d 134, 135 (2d Dep't 2005) (noting that unjust enrichment is a requirement for a court to impose a constructive trust).

[17] The Complaint should be dismissed in its entirety with prejudice as to the Fund because Plaintiffs already have had the benefit of pre-complaint discovery and an opportunity to replead. The Fund joins in the argument of Advisors on this point. Advisors Mem. at 3, 5-6.