UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| IN RE: AMARANTH NATURAL GAS COMMODITIES LITIGATION | : | Electronically Filed |
| This Document Relates to: | : | Master File No.: 07 Civ. 6377 (SAS) |
| ALL ACTIONS | : | |

---

## SUPPLEMENTAL DECLARATION OF DAVID E. MOLLÓN

I, DAVID E. MOLLÓN declare, pursuant to 28 U.S.C. § 1746, as follows:

1.　I am a member of Winston & Strawn LLP, counsel of record for Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Group Inc., and Amaranth Management Limited Partnership in this action. I submit this Supplemental Declaration in support of the Memorandum of Law in Support of Motion to Dismiss the Corrected Consolidated Class Action Complaint by Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Group Inc., Amaranth Management Limited Partnership, and Nicholas Maounis (the "Memorandum of Law"), filed with this Court on June 23, 2006.

2.　Attached hereto is a true and correct copy of *CFTC v. Dizona*, Civil Action No. H-05-332, slip op. (S.D. Tex. Apr. 24, 2008), cited on Page 14 of the Memorandum of Law, in accordance with Section I(E) of the Individual Rules and Procedures of Judge Scheindlin.

3.　I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

Dated: New York, New York
      June 26, 2008

                                                    /s/ David E. Mollón
                                                    DAVID E. MOLLÓN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| U S COMMODITY FUTURES TRADING COMMISSION, § § § Plaintiff, § VS. § ANTHONY DIZONA, *et al*, § § Defendants. § | § § § § § CIVIL ACTION NO. H-05-332 § § § § |

## MEMORANDUM AND ORDER

**I.   INTRODUCTION**

Before the Court are the defendant[1], Anthony Dizona's, motion for judgment as a matter of law [Doc. 200]; the plaintiff, the United States Commodity Futures Trading Commission's ("CFTC"), motion for entry of judgment consistent with the jury verdict [Doc. 201]; and the CFTC's response to Dizona's motion for judgment [Doc. 203]. The Court, having reviewed the motions and response, the arguments and the attendant law, is of the opinion that Dizona's motion should be granted, and the CFTC's motion should be denied.

**II.   FACTUAL BACKGROUND AND CONTENTIONS[2]**

The suit was brought pursuant to Section 6(c) of the Commodity Exchange Act, as amended (the "Act"). 7 U.S.C. §§1 *et. seq* (2002). In a four (4) count complaint for injunctive, equitable and civil monetary penalties relief, the CFTC filed suit against six (6) employees on the West Trading Desk of Coral Energy Resources, L.P. ("Coral"). All six individuals, including Dizona, were traders with Coral while employed with Shell Trading Gas and Power Company.

---

[1] The CFTC filed this suit against Denette Johnson, Courtney Cubbison Moore, John Tracy, Robert Hays, Kelly Dyer and Anthony Dizona. All defendants settled their dispute with the CFTC except Dizona.

[2] For a more thorough discussion on the issues raised in this case, *see U.S. Commodity Futures Trading Commission v. Johnson*, 408 F.Supp. 2d 257 (S. D. Tx. 2005).

1 / 8

According to the CFTC, the defendants violated Sections 6(c), 6(d) and 9(a) of the Act by delivering biased market information in interstate commerce in an attempt to manipulate the price of natural gas. It is alleged by the CFTC that during the period from October of 2001, through June of 2002, the defendants entered into transactions calling for the physical delivery of natural gas on behalf of Coral. Natural gas is a commodity that travels in interstate commerce through a network of pipelines across the United States. The transactions that are the subject of this suit are termed "physical" trades that occur at fixed prices, or at index prices, because they involved natural gas. Physical trades require the delivery of a specific amount of natural gas on particular days of the following month. Hence physical trades made up what was referred to as "baseload" trades.

A part of the defendants duties' included reporting natural gas market information, *i.e.*, price and volume data of purported natural gas trades, to certain reporting services that, in turn, generated natural gas price indices. These reporting services included Platts, a division of The McGraw-Hill Companies, that issued a monthly index for various natural gas hubs entitled *Inside FERC Gas Market Report* ("IFERC"). Another reporting service that generates a daily index is entitled, *Gas Daily*. In addition, the defendants reported to Intelligence Press, Inc., that published a monthly index entitled *Natural Gas Intelligence* ("NGI").

According to the CFTC, the defendants, in the face of Shell policy to the contrary and over the objections of IFERC and NGI, submitted price and volume data to IFERC and NGI that was not based on actual trades. Hence, the CFTC asserts that the defendants knowingly delivered price and volume data to the reporting services that contained "knowingly inaccurate fixed-price, physical, baseload trade information for several locations". The locations include:

H. W., San Juan, Malin, Socal, Gate, Penn, Sumas, PG&E Top. The purpose for this conduct, according to the CFTC, was to manipulate the natural gas price indices.

The CFTC asserts that during the relevant period that the defendants reported purported fixed price, physical, baseload natural gas trades to the reporting services, they utilized a method referred to as the "Index Directions e-mail." According to the CFTC's pleadings, Dyer circulated an e-mail during bidweek to traders on the West Desk. Bidweek refers to the last week of each month when trades are made and reported. The e-mail allegedly included an attachment spreadsheet that listed the locations from which the West Desk reported price and volume information to the reporting services. Each trader allegedly reported "trading activity for a particular location [NW, San Juan, Malin, Socal, Gate, Perm, Sumas and PG&E Top].

According to the CFTC, Dyer's spreadsheet contained three columns and two header titles -- "Up" and "Down". The first column contained the trader's mark, *i.e.*, the trader's estimate of what the index would publish as the price for a location. Each mark, or estimate, was obtained from the trader who was primarily responsible for the trading activity at a particular location. This same trader was also responsible for submitting trade information that would be reported to the price indices. The mark was obtained earlier by Dyer from the pertinent trader. The second and third columns were titled "Up" and "Down," respectively. Under the Up and Down headers were the words "Bad" or "Good". The word 'Bad" was in a red-colored font and the word "Good" a green-colored font. CFTC alleges that Dyer placed the words "Good" or "Bad" in the e-mail's spreadsheet depending on whether the index publishing, either above or below the trader's mark, would positively or negatively affect Coral's revenues.

The CFTC contends that the e-mail was directed to the traders, including Dizona, and that he knowingly reported biased trade information to IFERC and NGI for the purpose of affecting

the price of natural gas. Hence, Dizona knowingly delivered reports in interstate commerce to . . . " IFERC and NGI that contained false, misleading and knowingly inaccurate market information" . . . that included "fictitious purported natural gas trades. As well, the CFTC claims that Dizona failed to include actual natural gas trades." These acts, the CFTC argues, were designed to manipulate the market in violation of Sections 6(c) and (d) and 9(a)(2) of the Act. 7 U.S.C. §§ 6(c)(d), and 13(a)(2).

### III.   THE JURY VERDICT

The CFTC presented its case to a jury. At the conclusion of the presentation of the evidence, the Court's charge was presented to the jury, and after deliberation, the jury reached a verdict. The charge inquired whether Dizona delivered false reports to the index publishers and whether he committed acts intended to unlawfully manipulate the market price concerning natural gas trades. Question Number One inquired:

> Do you find from a preponderance of the evidence that in October 2001 and between January 2002 and June 2002 Anthony Dizona knowingly delivered for transmission to IFERC or NGI through the mails or interstate commerce knowingly false, misleading, or knowingly inaccurate reports, concerning crop or market information or conditions that affected or tended to affect the price of any commodity in interstate commerce?
>
> Answer Yes or No.

The jury answered "No". Therefore, the jury was not required to answer Question Number Two.

The jury, nevertheless, was required to answer Question Number 3 which inquired:

> Do you find from a preponderance of the evidence that in October 2001 and between January 2002 and June 2002 Anthony Dizona specifically intended to attempt to manipulate the market price of any commodity in interstate commerce or for future delivery on or subject to the rules of any registered entity, including any contract market?
>
> Answer Yes or No.

The jury answered "Yes". Therefore, the jury answered Question Number Four:

> On how many occasions in October 2001 and between January 2002 and June 2002 did you find by a preponderance of the evidence that Anthony Dizona attempted to manipulate the market price of natural gas in interstate commerce?
>
> Answer with a specific number:

The jury answered that Dizona intended to attempt to manipulate the market price on eight (8) occasions.

### IV.   THE DEFENDANT'S MOTION FOR JUDGMENT

The defendant contends that he is entitled to a judgment as a matter of law because the CFTC failed to present legally sufficient evidence to sustain the jury verdict of intent to attempt to manipulate. In this regard, the defendant contends that: (a) the CFTC failed to establish specific intent and any overt act on the part of Dizona; (b) the audio recording of a conversation between Dizona and a person identified as Carol Taylor, fails to prove specific intent or any act; and, (c) the testimony of the CFTC's summary witness was insufficient as a matter of law to establish attempted manipulation.

### V.   LEGAL ANALYSIS

A jury verdict is entitled to great deference when the evidence is sufficient. *Thomas v. Texas Dept. of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000). However, where the evidence is insufficient and the inferences fail to support, or is contrary to, the jury's verdict, a motion of judgment as a matter of law is appropriate. *Id.* To establish "intent to attempt to manipulate" the market price of a commodity in interstate commerce, the CFTC is required to show that Dizona committed specific acts intended to affect the market price of a commodity, and that he performed those overt act(s) in furtherance of that specific intent. *See Commodity*

*Futures Trading Commission v. Johnson*, 408 F.Supp. 2d 259, 267 (S.D. Tex. 2005); *See also, In re Hohenberg Bros.*, CFTC No. 75-4, 1977 WL 13562.

Manipulation is generally defined as conduct intentionally engaged and that results in an artificial price, *i.e.*, a price that does not reflect the basic forces of supply and demand. *Id.* (Note 41). Hence, a finding of manipulation that violates the Act requires a finding that the trader engaged in conduct with the intention of affecting the market price of a commodity and as a result of such conduct or course of action an artificial price was created. *Id.* An attempted manipulation is simply a manipulation that has not succeeded.

The CFTC points to Dizona's phone conversation with Carol Taylor concerning the locations NWPL, Sumas and Malin. To establish the overt acts necessary, the CFTC points to Dizona's e-mails, phone calls and the reporting spreadsheet. The CFTC points specifically to two phone calls, one in each of March and April 2002, concerning Sumas and Malin, showing that Dizona sought information from other traders that he used to create bias in his reports. Finally, the CFTC asserts that Dizona's own statement: "Let me test our book and if I can report it low for you I will", is an admission that he entered prices on the spreadsheet that was consistent with their Index Directions e-mail in most cases. The defendant argues that the evidence presented by the CFTC is at best hearsay evidence and, therefore, lacks the probative value to support a finding by a preponderance of the evidence that Dizona specifically intended to attempt to manipulate the market price of a commodity.

The Court is of the opinion that the jury verdict must be set aside on at least two bases. First, there is insufficient evidence that the "intent" required by the statute, and that is the focus of the CFTC's charge, is "specific intent" as required by the Act. The term "specific intent" describes a particular *mens rea*. Generally, the term "willfully" defines an act as committed

voluntarily and purposely, with the "specific intent" to do something the law forbids -- with bad purpose either to disobey or disregard the law. *See* [Fifth Circuit Pattern Jury Instructions]. Hence, specific intent signals unlawful conduct or the attempt to engage in unlawful conduct.

The jury did not find that Dizona knowingly delivered false or inaccurate reports concerning market information to the reporting services. Hence, there is no finding that Dizona committed an unlawful act in interstate commerce that affected or tended to affect the price of any commodity. And, there was no evidence that Dizona intended to "aid and abet" the reporting of false information to the reporter services. In fact, the evidence shows that Dizona, if anything, reported estimates to his supervisors concerning where the market might rest. An estimate does not violate the Act. Therefore, any "intent to attempt to manipulate the market price of any commodity" would be strictly an "in-house" estimate.

The jury was asked to infer from two telephone calls that Dizona supplied false information to Dyer to be forwarded to the reporting services with the intent to manipulate the price of natural gas. To reach this inference, the CFTC points to Dizona's involvement in an "orchestrated" scheme involving monthly activity reports, *i.e.*, the "index directions." In both instances there is no evidence that Dizona prepared or published the reports or followed through on the two phone call discussions. Equally important because Dizona shared reporting locations with another trader, the evidence does not establish that he, as opposed to this colleague, made any report.

A showing of manipulative intent requires more than proof of a profit motive. *In re Hohenberg Bros.*, [CFTC No. 75-4 at 9]. It also requires a showing beyond business judgment or professional estimates. There is no evidence that Dizona did any act that violated the Act. And, without a showing that Dizona's conduct, apart from the acts of his superiors, created an

7 / 8

artificial price, no violation occurred. *Id.* He is, therefore, not guilty by association. Moreover, there is no evidence that the prices reported and reflected in the reporting services reflected other than the basic forces of supply and demand. And, the summary testimony of the methods and means of the West Desk is insufficient evidence to establish specific intent, particularly in light of the jury's findings in Question Number One. Therefore, the Court holds that the evidence was insufficient as a matter of law.

A second basis for setting aside the jury verdict, rests in a fatal error in the wording of Question Number Four. Question Number Three requires a showing that Dizona "specifically intended to attempt to manipulate the market price" concerning a commodity. However, Question Number Four fails to carry forward the same language in order that the CFTC is held to the proper standard of proof. In Question Number Four, the Court inquired whether "Dizona attempted to manipulate the market price" of a commodity. Absent from this interrogatory is the requirement that the jury base its findings concerning the number of occasions on whether Dizona, "specifically intended to attempt to manipulate the market price" of a commodity. Hence, the error is fatal to an appropriate judgment.

Therefore, Dizona's motion for judgment as a matter of law is Granted with prejudice.

It is so Ordered.

SIGNED and ENTERED this 24th day of April, 2008.

_____
Kenneth M. Hoyt
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
IN RE: AMARANTH NATURAL GAS : 07 Civ. 6377 (SAS)
COMMODITIES LITIGATION
                                       :
**This Document Relates to:**
                                       :
**ALL ACTIONS**                          <u>CERTIFICATE OF SERVICE</u>
                                       :
------------------------------------- x


    I, LAURA R. WERNER, hereby certify under penalty of perjury that on June 26, 2008 the Supplemental Declaration of David E. Mollón in Support of Motion to Dismiss the Corrected Consolidated Class Action Complaint by Defendants Amaranth Advisors L.L.C., Amaranth Advisors (Calgary) ULC, Amaranth Group, Inc., Amaranth Management Limited Partnership, and Nicholas Maounis was served by operation of the Court's Electronic Case Filing system, and by email upon the following counsel:

| | |
|---|---|
| Vincent Briganti, Esq.<br>vbriganti@lowey.com<br>Geoffrey M. Horn, Esq.<br>ghorn@lowey.com<br>LOWEY DANNENBURG BEMPORAD SELINGER & COHEN, P.C.<br>White Plains Plaza<br>One North Broadway<br>White Plains, NY 10601 | Gregory Asciolla, Esq.<br>gasciolla@labaton.com<br>Bernard Persky, Esq.<br>bpersky@labaton.com<br>LABATON SUCHAROW & RUDOFF LLP<br>140 Broadway<br>New York, NY 10117 |
| Louis F. Burke, Esq.<br>lburke@lfblaw.com<br>LOUIS F. BURKE P.C.<br>460 Park Avenue 21st Floor<br>New York, NY 10022 | Christopher J. Gray, Esq.<br>gray@cjgraylaw.com<br>LAW OFFICE OF CHRISTOPHER J. GRAY P.C.<br>460 Park Avenue 21st Floor<br>New York, NY 10022 |

| | |
|---|---|
| Geoffrey Aronow, Esq.<br>Geoffrey.aronow@hellerehrman.com<br>Andrew Levine, Esq.<br>andrew.levine@hellerehrman.com<br>Richard Scott Goldstein, Esq.<br>richardgoldstein@hellerehrman.com<br>HELLER EHRMAN LLP<br>7 Times Square<br>New York, NY 10036<br><br>Joseph H. Fagan, Esq.<br>Joseph.fagan@hellerehrman.com<br>Thomas Samuel Kimbrell, Esq.<br>tom.kimbrell@hellerehrman.com<br>HELLER EHRMAN LLP<br>1717 Rhode Island Avenue, N.W.<br>Washington, D.C. 20036 | Marguerite Dougherty, Esq.<br>mdougherty@paulweiss.com<br>Eric S. Goldstein, Esq.<br>egoldstein@paulweiss.com<br>Mark Pomerantz, Esq.<br>mpomerantz@paulweiss.com<br>Daniel Toal, Esq.<br>dtoal@paulweiss.com<br>Jason Wilson, Esq.<br>jwilson@paulweiss.com<br>PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP<br>1285 Avenue of the Americas<br>New York, NY 10019 |
| Amelia T.R. Starr, Esq.<br>Amelia.starr@dpw.com<br>Sheldon L. Pollock, Esq.<br>Sheldon.pollock@dpw.com<br>Dharma B. Frederick, Esq.<br>Dharma.frederick@dpw.com<br>DAVIS POLK & WARDWELL<br>450 Lexington Avenue<br>New York, NY 10017 | Steven R. Golderg, Esq.<br>sgoldberg@mbfcc.com<br>STEVEN R. GOLDBERG, ATTORNEY-AT-LAW<br>One North End Avenue, Suite 1107<br>New York, NY 10282 |
| Mark Stein, Esq.<br>mstein@stblaw.com<br>Brijesh Dave, Esq.<br>bdave@stblaw.com<br>Joshua Adam Levine, Esq.<br>jlevine@stblaw.com<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017 | Adam Hakki, Esq.<br>ahakki@shearman.com<br>SHEARMAN & STERLING LLP<br>599 Lexington Ave<br>New York, NY 10022 |

| | |
|---|---|
| Karl Geercken, Esq.<br>Karl.geercken@alston.com<br>Alan Mark Kanzer, Esq.<br>akanzer@alston.com<br>Craig Carpenito, Esq.<br>Craig.carpenito@alston.com<br>ALSTON & BIRD, LLP<br>90 Park Avenue<br>New York, NY 10016 | Michael S. Kim, Esq.<br>Michael.kim@kobrekim.com<br>KOBRE & KIM LLP<br>800 Third Avenue<br>New York, NY 10022 |
| Christopher Lovell, Esq.<br>LSHLLP@LSHLLP.COM<br>Lovell Stewart Halebian LLP<br>500 Fifth Avenue<br>New York, NY 10110<br>(212) 608-1900 | Samuel Howard Rudman, Esq.<br>srudman@csgrr.com<br>Coughlin, Stoia, Geller, Rudman & Robbins, LLP<br>58 South Service Road<br>Suite 200<br>Melville, NY 11747<br>631-367-7100 |
| Ian Trevor Stoll, Esq.<br>istoll@lshllp.com<br>Lovell Stewart Halebian, LLP<br>500 Fifth Avenue, 58th Flr.<br>New York, NY 10110<br>(212)-608-1900 | |

Dated: New York, New York
      June 26, 2008

_____
LAURA R. WERNER